### THOMAS A. EDISON, Inc., v. WATERBURY BATTERY CO.

(District Court, D. Connecticut. May 9, 1922.)

No. 1518.

1. Patents ⬤⇒328—1,167,499, claim 1, for improvement in primary batteries, held not anticipated and infringed.

The Holland patent, No. 1,167,499, claim 1, for an improvement in primary batteries, the novel feature of which was a ribbed zinc plate constructed so as to retain its shape, while a greater proportion of the metal was consumed than in ordinary batteries, *held* not anticipated by prior patents, nor by defendant's prior plates, so as to disclose invention, and not to show estoppel by reason of failure to complain of the manufacture of defendant's prior plate, and also *held* infringed by defendant's later plate, applying the ribbed construction to a cylindrical form.

2. Patents ⬤⇒118—Disclosure need make invention clear only to one skilled in the art.

The specification of a patent is directed to those skilled in the art, and the disclosure is sufficient if it makes the invention clear to one so skilled, although to a layman the specification may need explanation.

3. Patents ⬤⇒328—1,061,541, claims 1 and 5, for improvements in primary batteries, held valid, but not infringed.

The Hudson and Elmes patent, No. 1,061,541, claims 1 and 5, for improvement in primary batteries, the distinguishing feature of which was a depression in the zinc plate, which would become a hole in the plate as the latter was eaten away, so as to give warning of the necessity for procuring a new plate, *held* not anticipated, but not infringed by defendant's plate, where perforations appeared at the bottom of the plate where it was thinnest, after which the body of the plate was eaten away upwardly.

In Equity. Suit by Thomas A. Edison, Inc., against the Waterbury Battery Company, for infringement of two patents. Decree for plaintiff as to the first patent, and bill dismissed as to the second patent.

J. Edgar Bull and George F. Scull, both of New York City, for plaintiff.

C. A. L. Massie, of New York City, Francis T. Reeves, of Waterbury, Conn., and Christian M. Newman, of Bridgeport, Conn., for defendant.

THOMAS, District Judge. This is a suit for an injunction and accounting, based upon an alleged infringement of claim 1 of letters patent No. 1,167,499, issued January 11, 1916, to Walter E. Holland, for

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an improvement in primary batteries, and of claims 1 and 5 of letters patent No. 1,061,541, issued May 13, 1913, to Elisha E. Hudson and Devereux Elmes, also for improvements in primary batteries. Both patents have been assigned to the plaintiff. It seems to be advisable to discuss these patents separately, although it is alleged that the battery manufactured by the defendant infringes both patents.

### The Holland Patent.

The specification of this patent says the invention—

"relates to improvements in primary or voltaic batteries of that class in which the negative electrode consists in a plate of oxide of copper or other depolarizing agent, and the positive electrode consists of a plate or plates of zinc."

Claim 1 is as follows:

"In a primary battery, a substantially homogeneous zinc electrode plate having its edges thickened to prevent reduction in effective area during the operation of the battery, and having strengthening ribs extending from said thickened edges across said plate integrally therewith, substantially as described."

The application for this patent was filed December 8, 1909, and the patent was issued January 11, 1916. It describes a primary battery; that is to say, a device by which a current of electricity is obtained by the "burning of zinc as a fuel." In a glass jar, filled with solution, called the electrolyte, are suspended in spaced relation two electrodes, the positive and the negative, in the form of plates made up of metals. The negative electrode consists of a plate of oxide of copper, or other depolarizing agent, and the positive electrode consists of a plate or plates of zinc. The electrolyte is a solution of caustic soda, which consumes or "eats" the zinc when the circuit is completed. The copper oxide plate is not consumed in the operation of the battery, and does not change its shape. Its chemical composition, however, changes.

As zinc is the fuel which is consumed in a battery, a certain amount must be burned up for every ampere hour of current produced, and this amount is a fixed and known quantity. It appears from the record that it is essential that more zinc than this amount must be put into the plate, because at the end of the useful life of a battery there must still remain a zinc plate large enough in area so as not to throttle the flow of current. This excess of zinc in properly designed plates was, prior to Holland's invention, from 60 to 70 per cent. of the total zinc which is present.

The alleged improvement of Holland consists in so designing the positive plate that the full amount of its active surface is maintained down to the end of the discharge with a much smaller percentage of zinc in excess of the theoretical amount, or to greatly increase the size of a plate while only slightly increasing its weight. This Holland accomplished by forming the positive plate or plates with an integral flange or rib upon its surface, or a plurality of such ribs, whereby it becomes possible to make the body of the plate much thinner than it would otherwise have to be in order to maintain its shape after it has been considerably consumed. In other words, the gist of the Holland invention

is, not the adding of ribs to an old zinc plate, but, on the contrary, to obtain a given amount of useful work with the minimum amount of zinc in the plate, and this object is obtained by making the plate thinner between the ribs and thicker where the rib is placed.

Referring to the specification, it is found that the electrode plate defined by the claim in suit has ribs or flanges formed preferably in the side nearest the negative plate, these ribs or flanges extending adjacent to the lower edge of the plate, and, preferably, extending also adjacent to the side edges and upper edge of the same side of the plate. Preferably, also, the plate is formed with a vertical strengthening rib midway between the side flanges, and with a horizontal strengthening rib about midway between the upper and lower horizontal flanges. The specification continues (page 2 of the patent, lines 43 to 45, inclusive):

"It is, however, obvious that a different number of strengthening ribs may be employed, if desired, spaced in a different manner."

The defenses are: (1) Lack of patentable novelty and invention, by reason of various prior patents and other printed publications in evidence; (2) anticipation of the patent by defendants' "W. B. Co." zincs; (3) invalidity because of insufficient disclosure with respect to preventing reduction in effective area; (4) noninfringement; and (5) estoppel in favor of defendant's ribbed zinc cylinders, by reason of plaintiff's failure throughout a long period to complain of defendant's ribbed "W. B. Co." electrodes.

## 1. Anticipation by Prior Patents.

[1] The question of anticipation by prior patents and printed publications may be easily disposed of. The question presented is whether or not the patents and prior publications describe a zinc or any other electrode having thickened edges and strengthening ribs to prevent reduction in effective area during the operation of the battery, keeping in mind that the body of the plate is made thinner than it would otherwise have to be in order to maintain its shape after it has been considerably consumed. A careful perusal of the patents and printed publications introduced in evidence fails to bring out anything to show that it was ever intended, before Holland's invention, to produce the zinc electrode as called for by the claim in suit. True, there have been plates described, the edges of which have been thickened; but there is nothing of record which convinces me that any one ever had the patentee's purpose in mind in applying thickened edges to electrode plates. Unless there can be found in the prior patents and publications instructions on how to economize zinc without impairing the capacity and performance of the battery, it follows that the prior patents and publications would not anticipate Holland's invention. A careful examination of all such as are in evidence satisfies me that there is no such disclosure therein made as appears in the Holland invention, and I therefore conclude that there is no anticipation of Holland in the prior patents.

### 2. Anticipation by Defendant's "W. B. Co." Plates.

It does not seem to be necessary to consider the testimony relating to the date when the "W. B. Co." plate was first put on the market, nor the date of the invention, as it obviously is not an anticipation of the Holland patent, there being no question but that the "W. B. Co." plates have so much zinc in them that, even without the ribs, there would be no reduction of effective area during operation of the battery. This disposes, also, of the question of laches and estoppel. Defendant's Exhibits C and D convince me that Schoenmehl never thought of making the body of the plate thinner than it would otherwise have to be in order to maintain its shape after it has been considerably consumed.

### 3. Invalidity Because of Insufficient Disclosure.

[2] The disclosure of the Holland patent with respect to preventing reduction in effective area makes the invention clear to one skilled in the art, although to a layman the specification may need explanation. The law is, however, clear on the proposition that the specification of a patent is directed to those skilled in the art. In my opinion, any one skilled in the art, having before him the Holland patent, and desiring to design the plate defined by the claim in suit, could do so without difficulty, after having first decided as to the ampere hours to be obtained.

### 4. Infringement.

Thus we are led to the question of infringement. Defendant has initially manufactured plain plates, which were in time crowded out by the "W. B. Co." flat electrodes. The electrodes which now constitute its principal manufacture, and which have gone into extensive use, and as to which the charge of infringement in this suit is limited, are cylindrical plates, like Plaintiff's Exhibit 4. This cylindrical plate is made by casting, and is therefore homogeneous. It appears that its lower horizontal edge is thickened, and there are also strengthening ribs extended from the lower thickened edge across the plate, integral therewith. The strengthening ribs extend up from the bottom rib, and are thickest at the bottom rib, and then are gradually reduced in transverse cross-section until they merge into the upper part of the plate. The plate itself is thickest at its upper horizontal edge, it being reduced gradually toward and to the bottom rib. If Plaintiff's Exhibits 3 and 4 are compared as to weight, it is found that in Exhibit 3 the excess of zinc is approximately 59.8 per cent., while in Exhibit 4 the excess is only 40 per cent. The 59.8 per cent. excess is very close to the 60 or 70 per cent. excess which Holland points out in his patent as being the excess found in well-designed cells prior to his invention. The excess of 40 per cent. in Plaintiff's Exhibit 4 is, on the other hand, very close to the illustrative example at the top of page 2 of the Holland patent, which, translated, gives 39 per cent. as the excess when his invention is used.

The fact that claim 1 of this patent calls for a plate having thickened edges, while defendant's plates have only one thickened edge (the hori-

281 F.—17

zontal bottom edge), in no way avoids infringement, as it is obvious that defendant has applied the teachings of the Holland patent to a cylindrical plate, instead of to a flat plate. Defendant's allegation that the strengthening ribs in Exhibit 4 do not extend across the plate does not merit, in my opinion, serious consideration. No question but that the strengthening ribs extend in a direction transversely over the plate, and this is what "across" means; the term not being confined to a strengthening rib which extends from edge to edge.

For the reasons given, it is held that claim 1 of the Holland patent is infringed by defendant's zincs like Plaintiff's Exhibit 4.

### The Hudson and Elmes Patent.

This invention also relates to primary batteries, and its object is to provide an electrode plate for such batteries which will furnish means for giving advance indication to the user of the approaching exhaustion of the plate, so that he may be prepared to renew the same. The indicating means consists in forming a small depression in the side of the positive plate farthest away from the negative plate with which it coacts in the battery. When the positive plate has been worn sufficiently thin by the electrolytic action of the cell it wears through one or more holes in the depressed portion of the plate, thereby indicating to the user that the plate will have to be renewed shortly.

The claims in issue read as follows:

1. "In a primary battery, a positive plate having a depression of small area on the side farthest away from the negative element with which it coacts, for indicating the approaching necessity for renewal, substantially as described."

5. "In a primary battery, a removable positive plate having a small portion thereof of reduced thickness, in which portion the plate is adapted first to wear through in the operation of the battery to indicate a predetermined extent of consumption of the plate, substantially as described."

The defenses to this patent are: (1) Lack of patentable novelty and invention by reason of various prior patents, including anticipation by the patentee Holland, above mentioned, and by plaintiff's prior public use and sale of the Holland zinc; (2) anticipation by defendant's "W. B. Co." zincs; (3) noninfringement; (4) estoppel by reason of plaintiff's failure over a long period to complain of defendant's "W. B. Co." flat electrodes.

### 1 and 2. Anticipation by Prior Patents and "W. B. Co." Zincs.

[3] All of the patents which have been introduced in evidence to show lack of patentable novelty and invention relate to arts so foreign to primary batteries that they may be dismissed without discussion. They do not describe devices which predict an event, but those which indicate the fact that an event has happened.

The essence of the invention described in this patent is that the battery man should be told in advance when the battery is going to fail, so that he may replace it with a new battery before it does fail. Bearing this in mind, it appears that the depression in the side of the battery must be such that a small hole will be worn into the side at the

·depression before any other part of the plate will be eaten away, and the plate will remain integral for a predetermined time after the hole has been formed. This being the case, it must be held that the patent is not anticipated by the patentee Holland, nor by the plaintiff's prior public use and sale of the Holland zincs. The Holland plates, sold prior to the invention of Hudson and Elmes, showed no perforations until the very end of the useful discharge. Obviously a perforation at this state of exhaustion is not of any use as a warning signal. The same conclusion is reached with reference to the anticipation of the patent by defendant's "W. B. Co." zincs.

### 3. Noninfringement and Estoppel.

In defendant's plate, perforations appear immediately above the bottom rib, as that portion of the plate is the weakest. After these perforations have appeared, the body of the plate is eaten away upwardly. The depression is therefore not such as to permit of the formation of a hole in the plate without attacking the body as a whole. In view of this fact, I conclude, and therefore hold, that claims 1 and 5 of the Hudson and Elmes patent, although valid, are not infringed by a plate of the type of Plaintiff's Exhibit 4. Such being the conclusion, the question of estoppel need not be considered.

Concluding as I do that claim 1 of the Holland patent in suit is valid and infringed, there may be a decree for the plaintiff upon this claim, as prayed for in the bill. Concluding that claims 1 and 5 of the Hudson and Elmes patent are valid, but not infringed, the defendant is entitled to a decree in its favor, dismissing the bill as to this patent. No costs to either party.

Ordered accordingly.